# Exhibit "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
NAIM SAYODI, RAY SANCHEZ, and ABU OMAR,
on behalf of themselves and all others similarly situated,

                          Plaintiffs,

           -against-

HIGHGATE HOTELS, L.P., and KNICKERBOCKER
HOTEL,

                    Defendants.
-----------------------------------------------------------------X

Index No.

Plaintiff designates
New York County
as the place of trial

**SUMMONS**

Basis For Venue
New York County:
Defendants' principal place of
business

TO THE ABOVE NAMED DEFENDANTS:

       **YOU ARE HEREBY SUMMONED TO ANSWER** the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice

of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this summons,

exclusive of the date of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to appear

or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:   New York, New York
         November 2, 2018

                          **JOSEPH & NORINSBERG, LLC**

                          By: _____
                          Chaya M. Gourarie, Esq.
                          225 Broadway, Suite 2700
                          New York, New York 10007
                          Tel: (212) 227-5700
                          Fax: (212) 406-6890
                          chaya@norinsberglaw.com
                          *Attorneys for Plaintiffs and Putative Class*

Case 1:18-cv-10989-JMF   Document 1-1   Filed 11/26/18   Page 3 of 23

Defendant(s)' Address:

HIGHGATE HOTELS, L.P.
870 Seventh Avenue
New York, New York 10019

KNICKERBOCKER HOTEL
6 Times Square, W. 42nd Street
New York, New York 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

NAIM SAYODI, RAY SANCHEZ, and ABU                    Index No.:
OMAR, on behalf of themselves and all others
similarly situated,                                  **COMPLAINT**

                                Plaintiffs,      **DEMAND FOR JURY TRIAL**

       -against-                                **Class Action Complaint**


HIGHGATE HOTELS, L.P., and                           Basis For Venue
KNICKERBOCKER HOTEL,                                 New York County:
                        Defendants.    Defendants' principal place of business


-------------------------------------------------------------------X

Plaintiffs Naim Sayodi, Ray Sanchez, and Abu Omar ("Plaintiffs"), by and through their

attorneys, Joseph & Norinsberg, LLC, allege on behalf of themselves and all others similarly

situated, as follows:

## NATURE OF CASE

1.     Plaintiffs bring this action on behalf of themselves and all others similarly situated

for Defendants' systemic and continuous violations of: (i) The tip retention provisions of the Fair

Labor Standards Act, as amended, 29 U.S.C. §§ 203 (m) and (t).; ("FLSA"); (ii) The tip retention

provisions of the New York Labor Law ("NYLL") § 196-d, and the NY Comp. Codes R. & Regs

Tit. 12, § 146-2.18 and § 146-2.20 ("NYCRR"); (iii) The minimum wage and overtime provisions

of the NYLL and the tip credit provisions as contained in New York State regulation, 12

N.Y.C.R.R. § 146-1.3; (iv) The record keeping requirements of the NYLL § 195(4); (v) The

requirement that employers furnish employees with wage statements on each payday, containing

specific categories of accurate information, and also provide employees with accurate wage notice

at the time of hiring, and on an annual basis, pursuant to NYLL § 195(1) and (3), codified as the

New York Wage Theft Prevention Act (the "NYWTPA"); and (vi) Any other cause(s) of action that can be inferred from the facts set forth herein.

2.      Additionally, Plaintiff Abu Omar brings this action to seek redress for Defendants' violations of the religious anti-discrimination provisions of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 (1) and (7), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.

**PRELIMINARY STATEMENT**

3.      This action arises out of Defendants' willful and systemic failure to pay Plaintiffs and the Class the fees they routinely charged patrons or customers for all food, drink and service labor provided at hundreds of catered events held during the statutory period.

4.      Plaintiffs worked at the roof-top lounge of Knickerbocker Hotel, called "St. Cloud," as servers, bartenders, and bar-backs. St. Cloud is a much sought-after venue for private parties and banquets, as it could hold up to 3 parties at a time. Thus, there could be several parties per day, throughout the week, requiring the dedicated service of the entire waitstaff. The contract price for the parties typically included various fees and charges, such as a "bar fee" for additional bar service.

5.      Additionally, on New Year's Eve, and during other significant holidays, St. Cloud would host a high-end party, where tickets were as high as $100,000.00 per patron. Again, the contract price included various fees and charges for additional services on top of the food and liquor being served. However, when Plaintiffs received their tips, collectively, after these high-end parties, it was a fraction of what the estimated revenue was for the evening. Upon information and belief, Defendant Knickerbocker retained majority of the tips received from the event.

6.      Though a reasonable customer would believe that the various "fees" were in fact a gratuity for Plaintiffs and the Class, Defendants have failed to pay the fees to Plaintiffs and the

2

Class and instead retained the money for their own benefit, in violation of New York Labor Law (the "NYLL"), Article 6, § 196-d. The New York Court of Appeals has explicitly ruled that this practice violates the NYLL. See Samiento v. World Yacht Inc., 10 N.Y.3d 70 (2008).

7.      Additionally, Defendants Highgate and the Knickerbocker Hotel required Plaintiffs to sign a Tip Pool Agreement as a condition of their employment.  The Tip Pool, as actually distributed, upon information and belief, included staff that should not have been included. Indeed, the tip pool was not governed by the employees, and there was no transparency with respect to the distribution of the tips among the waitstaff.

8.      Defendants' unlawful conduct has been widespread, repeated, consistent, and willful.

9.      Plaintiffs seek damages, interest, costs and attorneys' fees on their own behalf and on behalf of all others similarly situated.

### JURISDICTION AND VENUE

10.      Jurisdiction is proper pursuant to NY CPLR §§ 301 and 503.

### DEMAND FOR A JURY TRIAL

11.      Pursuant to NY CPLR § 4012, Plaintiffs demands a trial by jury in this action.

### PARTIES

12.      At all times relevant to the Complaint, Plaintiff Naim Sayodi was and is a resident of the City of New York, maintaining an address at 1808 Beverly Road, Brooklyn, New York, 11226.

13.      At all times relevant herein, Mr. Sayodi was an "employee" of the Defendants within the meaning of the FLSA, 29. U.S.C. §203(e)(1) and the NYLL §190(2).

3

14.     At all times relevant to the Complaint, Plaintiff Ray Sanchez was and is a resident of the City of New York, maintaining an address at 444 East 86th Street, Apt. 36E, New York, New York.

15.     At all times relevant herein, Mr. Sanchez was an "employee" of the Defendants within the meaning of the FLSA, 29. U.S.C. §203(e)(1), and NYLL §190(2).

16.     At all times relevant to the Complaint, Plaintiff Abu Omar was and is a resident of the City of New York, maintaining an address at 105-05 77th Street, 2nd Floor, Ozone Park, New York.

17.     At all times relevant herein, Mr. Omar was an "employee" of the Defendants within the meaning of the FLSA, 29. U.S.C. §203(e)(1) and NYLL §190(2).

18.     At all times relevant to the Complaint, Plaintiff Khalid Ahmad was and is a resident of the City of New York, maintaining an address at 575 Southern Blvd, Apt. 4A, Bronx, New York.

19.     At all times relevant herein, Mr. Ahmad was an "employee" of the Defendants within the meaning of the FLSA, 29. U.S.C. §203(e)(1) and NYLL §190(2).

### *HIGHGATE HOTELS, L.P.*

20.     At all times relevant to this action, Defendant Highgate Hotels L.P. ("Highgate"), was and is, Foreign Limited Partnership with its principal place of business located at 870 Seventh Avenue, New York, NY.

21.     At all times relevant to this action, Highgate was and is engaged in interstate commerce, as defined by the FLSA, and Defendant Highgate's qualifying annual business exceeds $500,000.00, the combination of which subjects Highgate to the FLSA's overtime requirements.

4

22.     Upon information and belief, Highgate is a hotel management company with over 100 hotels under its management, which includes the Knickerbocker Hotel, located at 6 Times Square, W. 42nd Street, New York, NY.

23.     At all times herein, the named Plaintiffs worked as servers, bartenders and barbacks for a hotel that were owned and managed by Highgate. Upon information and belief, Highgate's policies and procedures related to the terms and conditions of Plaintiffs' employment were determined by Defendant Highgate.

24.     At all times relevant to this action, Defendant Highgate was an "employer" within the meaning of the FLSA and the NYLL.

### *KNICKERBOCKER HOTEL*

25.     At all times relevant to this action, Defendant Knickerbocker Hotel ("Knickerbocker"), was and is, a hotel located at 6 Times Square, W. 42nd Street, New York, NY.

26.     At all times relevant to this action, Plaintiffs were employed by and worked at the Knickerbocker, owned by Defendant Highgate.

27.     At all times relevant to this action, Defendant Knickerbocker directly controlled the terms and conditions of the Plaintiffs' employment.

28.     At all times relevant to this action, Defendant Knickerbocker was an "employer" within the meaning of the FLSA and the NYLL.

## <u>NEW YORK CLASS ACTION ALLEGATIONS</u>

29.     Plaintiffs seek to commence this action as a class action, pursuant to CPLR §901, on their own behalf, as well as on behalf of those who are similarly situated.   The Class that the Plaintiffs seek to define includes:  All servers, bartenders, bar-backs and busboys who work or have worked for the Defendants during the relevant statutory period, and who (i) were denied

lawful tips in violation of the NYLL; and/or (ii) were denied minimum wage in violation of the NYLL ("New York Class").

30.     During the previous six years, Defendants have, in total, employed hundreds of employees who are putative members of this class.  The members of the New York Class are so numerous that joinder of all members in this case would be impracticable.  Plaintiffs estimate that there are over 100 Class members who reside and work in New York.  The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

31.     Plaintiffs' claims are typical to those other members of the Class as Plaintiffs and all other members of the Class sustained damages arising out of Defendants' conduct in violation of state laws as complained of herein.  Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex class action litigation.  The Class members work, or have worked, for Defendants' hotels as members of the defined Class; enjoy the same statutory rights and protections under the NYLL; and have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

32.     Plaintiffs have no interests that are contrary to or in conflict with, those other members of the Class.

33.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members.   Among the questions of law and fact in common to the Class are:

    a.  Whether the fees and service charges to Defendants' customers was a "gratuity" within the meaning of NYLL § 196-d.

6

b.  Whether Defendants illegally retained the Plaintiffs' tips;

c.  Whether Plaintiffs were denied minimum wage;

d.  Whether Defendants violated the NYLL and the N.Y.C.R.R. by failing to properly pay the New York Class Plaintiffs in accordance with the applicable tip credit law;

e.  Whether employees made distributions from the tip pool to employees not eligible to receive tips;

f.  Whether Defendants failed to make, keep and preserve records of the tip pool;

g.  Whether Defendants gave Plaintiffs proper wage statements as required by New York Labor Law § 195 and the New York Hospitality Wage Order;

h.  Whether Defendants gave Plaintiffs proper wage notices upon hiring, and annually thereafter, as required by New York Labor Law § 193; and

i.  Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

35.    Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein.  Treating this as a class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  As a practical matter, absent a class action, individual members may be reluctant to file a lawsuit to recover lawful amounts due them, particularly if the amount is too small or in fear of retaliation.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The Class members will be readily identifiable from the records Defendants are legally obligated to maintain.

36.    This forum is ideal for the consolidation of this litigation as it has a direct connection to the subject matter of this action because Defendants are each located in the County of New York.

37.     Prosecuting separate or individual actions would put unnecessary strain on the Court's resources, as well as those of the Defendants and individual Class members.  Plaintiffs are not aware of any individual actions filed against the Defendants arising from the subject matter herein.

38.     Without a class action, Defendants would be permitted to continue to retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to the members of the Class

## INDIVIDUAL FACTUAL ALLEGATIONS

### NAIM SAYODI

39.     Defendants hired Plaintiff Naim Sayodi on or about May 25, 2015 to work as a server at the Knickerbocker.

40.     From May 25, 2015 until approximately November 2017, Plaintiff worked, on average, in excess of 40 hours per week.

41.     Plaintiff Sayodi was paid $11.00 per hour – a sum below the relevant minimum wage in 2017 – plus tips as wages on a weekly basis.

42.     During the course of his employment at Knickerbocker Hotel, Sayodi worked as a server at hundreds of parties throughout the year. When the party was large, a removable marble bar was used, approximately twice a week, in order to additional bars for patron access.  When this marble bar was used, the customer was charged a "bar fee" of $250.00 which was a gratuity and was intended to go to Plaintiffs. However, Plaintiffs never received any part of the $250.00 gratuity when the additional bar was used, despite the additional work.

43.     On New Years' Eve 2017, which was representative of other years, St. Cloud's approximately 400 guests. There were various levels of ticket prices, the highest being

8

$100,000.00, and so on, in decreasing dollar increments, which included various fees and charges. Plaintiffs worked a twelve-hour shift for this party, but when Plaintiffs received their tips, collectively, the following morning, it was a fraction of what the estimated revenue was for the evening. When Sayodi requested an accounting of the tips for that evening, Defendants refused to disclose this information.

44.     Additionally, in willful disregard of the NYLL and the N.Y.C.R.R., Defendants failed to pay the Sayodi and the New York Class the lawful minimum wages for each hour that they worked up to forty (40) in a work week. Specifically, Sayodi was paid $11.00 an hour, which is below minimum wage for the relevant time period.

45.     Furthermore, as set forth below, Defendants were not entitled to supplement the minimum wage with tip credits because they failed to satisfy the necessary statutory requirements under the NYLL.

46.     Sayodi, additionally, was required to participate in a tip-pool based on points. For a brief period of time, Defendants posted a notice of the tips so that Plaintiffs could see the exact breakdown. However, after a while, Defendants stopped posting the breakdown, and Plaintiffs did not know how their tips were being distributed. Sayodi frequently tried to do the breakdown on his own, but it never added up; there always seemed to be money missing from the pool.

47.     The distribution of the pool of cash tips was even more suspect. Upon information and belief, management retained percentage of the cash tips.

48.     Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, including tips, among other violations.

## RAY SANCHEZ

49.     Defendants hired Plaintiff Ray Sanchez on or about May 31, 2016 to work as a bartender at the Knickerbocker Hotel.

50.     From May 31, 2016 until approximately December 29, 2017, worked, on average, in excess of 32 hours per week.

51.     Plaintiff Sanchez was paid $13.00 per hour, plus tips as wages on a weekly basis.

52.     Defendants regularly failed to pay Plaintiff the appropriate amount of tips due to him as a result of, inter alia: 1) charging fees and services to customers, which the customers believed were gratuities, and then failing to remit those tips to Plaintiff; 2)  retaining a portion of the cash tips for themselves; 3) not paying the appropriate amount of tips collected from credit card payments; and 4) including non-tipped employees in the tipping pool.

53.     This unlawful practice reached its peak on New Year's Eve  2017, when Defendants retained for themselves a large portion of the tips after Plaintiffs worked a long 12-hour shift. The customers certainly believed that a portion of their fees were being remitted as gratuities to the waitstaff who had served them all through the evening.  This same unlawful practice was repeated at multiple other high-end parties throughout the statutory period.

54.     Sanchez personally asked for a breakdown of the tips at the New Year Eve's party, and his manager refused to supply an answer.

55.     Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, including tips, among other violations.

## ABU OMAR

56.     Defendants hired Plaintiff Abu Omar on or about October 7, 2016 to work as a bar-back at the Knickerbocker.

57.     From October 7, 2016 until approximately December 29, 2017, worked, on average, 50 hours per week.

58.     Plaintiff Omar was paid $14.00 per hour, plus tips as wages.

59.     Upon information and belief, Defendants regularly failed to pay Plaintiff the appropriate amount of tips due to him as a result of, inter alia: 1) charging fees and services to customers, which customers believed were gratuities, and then failing to remit these tips to Plaintiff; 2)  retaining a portion of the cash tips for themselves; 3) not paying the appropriate amount of tips collected from credit card payments; and 4) including non-tipped employees in the tipping pool.

60.     This unlawful practice reached its peak on New Year's Eve 2017, when Defendants retained for themselves a large portion of the tips after Plaintiffs worked a long 12-hour shift. The customers certainly believed that a portion of their fees were being remitted as gratuities to the waitstaff who had served them all through the evening.  This same unlawful practice was repeated at multiple other high-end parties throughout the statutory period.

61.     Additionally, Defendants discriminated against Omar because of he was a Muslim. Specifically, Defendants refused to adjust Mr. Omar's schedule to permit him to pray for half-an-hour on Friday.  This happened on October 28, 2016, February 17, 2017, March 3rd, 2017, and March 10, 2018.

62.     Mr. Omar complained about his inability to pray in accordance with his faith, and asked to be permitted half-an-hour to pray on Friday.

63.     In response, Defendants immediately engaged in retaliatory conduct and terminated Mr. Omar's employment on grounds of newly-invented "performance issues." These alleged "performance issues" were entirely pretextual, as Mr. Omar had never received any verbal or written warnings pertaining to his performance

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
*(Violation of 29 U.S.C. §203(m) and (t)—Illegal Retention of Tips)*

64.     Plaintiffs and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65.     Pursuant to 29 U.S.C. § 203(m), employees must retain all of their tips, except to the extent that they participate in a valid tip pooling or sharing arrangement.

66.     Federal regulations prohibit an employer from requiring an employee to turn over his tips to the employer.  Pursuant to 29 C.F.R. § 531.52, in the absence of an agreement to the contrary, "[t]ips are the property of the employee" who received them; thus, an "employer is prohibited from using an employee's tips, whether or not is has taken a tip credit, for any reason other than that which is statutorily permitted" by 29 U.S.C. § 203(m).

67.     In the case at bar, Plaintiffs did not agree to the tip pools arranged by the Defendants, particularly with respect to the tip pools used at parties and on New Year's Eve, and at other high-end parties throughout the year.  Likewise, Plaintiffs did not agree to the fact that management retained a portion of their cash tips.

68.     At no point did Plaintiffs participate in a valid tip pooling or sharing arrangement.

69.     By unlawfully retaining customer tips belonging to Plaintiffs, Defendants violated 29 U.S.C § 203(m) and 29 C.F.R. § 531.52.

70.     By failing to pay Plaintiff lawful tips, Defendants violated 29 U.S.C § 206 and 29 C.F.R § 531.35.

71.    Plaintiffs have suffered and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful acts.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
*(Illegal Tip Retention, NYLL§196-d; 12 CRR-NY §146-2.18 and §146-2.20)*

72.    Plaintiffs and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

73.    Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

74.    A charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service.

75.    §146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to, any charge for "service" or "food service," is a charge purported to be a gratuity.

76.    Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed the costs of converting credit card gratuities into cash.

77.    Plaintiffs have suffered and will continue to suffer irreparable injury and monetary damages as a result of Defendants' acts.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
*(Failure to Pay Minimum Wage - NYSLL)*

78.    Plaintiffs and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

13

79.     Defendants violated the NYLL by failing to pay Mr. Sayodi and class members the required minimum wage for all hours worked up to (40) hours per workweek.

80.     Defendants' violations of the NYLL were knowing and willful.

81.     Pursuant to 12 NYCRR § 146-1.3, an employer may take a tip credit against the applicable minimum wage for tipped employees, provided that it complied with all statutory regulations.

82.     Specifically, 12 NYCRR § 146-1.3 prohibits employers from taking a tip credit against an employee's minimum wage unless such employee "receives enough  tips and if the employee has been notified of the tip credit as required in Section 146-2.2."

83.     Here, Defendants failed to comply with the statutory requirements for taking a tip credit. Specifically, Defendants failed to inform Plaintiff Sayodi, and similarly situated class members, of the provisions of 12 NYCRR §§146-1.3, 146-2.2.

84.     By the above acts, Defendants forfeited the right to take a tip credit and were required to pay Mr. Sayodi, and similarly situated class members, the full minimum wage in cash for all hours worked during the relevant time periods pursuant to NYSLL §§ 652, 196-d; 12 NYCRR §§ 146-1.3, 146- 2.16, 146-2.17, 146-2.2, 146-3.4.

85.     Based on the foregoing, the Defendants are liable for the unpaid minimum wages of Mr. Sayodi and the New York Class, plus liquidated damages, costs and reasonable attorneys' fees.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
*(Unlawful Tip Sharing under NYLL § 196-d)*

86.     Plaintiffs and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

14

FILED: NEW YORK COUNTY CLERK 11/02/2018 06:16 PM
NYSCEF DOC. NO.     Case 1:18-cv-10989-JMF    Document 1-1    Filed 11/26/18    Page 18 of 23

INDEX NO. 160242/2018

RECEIVED NYSCEF: 11/02/2018

87.     Defendants maintained a mandatory tip pool and failed to explain to Plaintiffs how the tips were broken down at the end of a shift.

88.     For a period of time, Defendants would hang up a chart displaying the breakdown of the tips, but after several months, the Defendants stopped this practice.

89.     Upon information and belief, Defendants required tipped employees including Plaintiffs and other members of the Class to share tips with employees who did not perform direct customer service in violation of NYLL § 196-d.

90.     As a result of Defendants' unlawful conduct, Defendants are liable to the Class in an amount of damages to be determined at trial, including compensatory damages and such other relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
*(Tip Pooling Records Violation under NYLL § 195(4) & 12 NYCRR § 146-2.17)*

91.     Plaintiffs and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

92.     Defendants failed to establish, maintain and preserve adequate records of their tip pooling operation in violation of NYLL § 195(4) and 12 NYCRR § 146-2.17.

93.     Defendants failed to make any records of the tip pooling operation available for Plaintiffs to review, in violation of 12 NYCRR § 146-2.17.

94.     Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs were not in good faith.

95.     As a result of Defendants' unlawful conduct, Defendants are liable to the Class in an amount of damages to be determined at trial, including compensatory damages and such other relief as this Court deems just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
*(Violation of NYLL § 195(1)— Time of Hire Wage Notice Requirement)*

96.    Plaintiffs and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

97.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. See NYLL §195-1(a).

98.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment, and annually thereafter.

99.    Specifically, Defendants failed to accurately record the lawful tips owed to Plaintiffs and the Class.

100.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50.00 for each workday that the violation occurred or continued to occur, up to $5,000.00, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS
### *(Violation of NYLL § 195(3)—Pay Stub Requirement)*

101.    Plaintiffs and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday in accordance with NYLL §195(3).

103.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide full and accurate paystub on or after each Plaintiffs' payday.

104.    Specifically, Defendants failed to accurately record the lawful tips owed to Plaintiffs and the Class.

105.    Due to Defendants' violations of New York Labor Law, each Plaintiffs are entitled to recover from Defendants, jointly and severally, $250.00 for each workday of the violation, up to $5,000.00 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF
## BY PLAINTIFF ABU OMAR AGAINST DEFENDANTS
### *(Discrimination and Retaliation on the Basis of Religion in Violation of*
### *NYSHRL, N.Y. Exec. Law § 296; and NYCHRL, N.Y.C. Admn. Code § 8-107)*

106.    Plaintiff Abu Omar repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

107.    Defendants discriminated against Plaintiff Abu Omar on the basis of his religion (Muslim) in violation of NYSHRL, N.Y. Exec. Law § 296; and NYCHRL, N.Y.C. Admn. Code § 8-107, by failing to provide him with an accommodation for his religious observance.

17

108.     Specifically, Defendants refused to adjust Mr. Omar's schedule to permit him to pray for half-an-hour on Friday. This happened on October 28, 2016, February 17, 2017, March 3rd, 2017, and March 10, 2018.

109.     Mr. Omar complained about his inability to pray in accordance with his faith, and asked to be permitted half-an-hour to pray on Friday.

110.     In response, Defendants immediately engaged in retaliatory conduct and terminated Mr. Omar's employment. Indeed, on March 29, 2017, Defendants terminated Mr. Omar's employment over the phone on his day-off, on grounds of newly-invented "performance issues." These alleged "performance issues" were entirely pretextual, as Mr. Omar had never received any verbal or written warning pertaining to his performance.

111.     Mr. Omar engaged in protected activity by seeking a religious accommodation and then by submitting a verbal complaint to Defendants and highlighting that Defendants' conduct was unlawful.

112.     Defendants' acts of discrimination and retaliation were intentional, willful, malicious and in reckless disregard for Mr. Omar's rights.

113.     The temporal proximity between Mr. Omar's exercise of his rights under the NYSHRL and NYCHRL and Defendants' adverse employment action give rise to an inference of retaliation.

114.     As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL and NYCHRL, Mr. Omar has suffered and continues to suffer damages, in many forms including, but not limited to, loss of income, loss of future earnings and severe emotional distress, mental anguish pain and suffering.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a) Certifying the New York Class in accordance with CPLR §§ 901-902 with respect to the claims set forth above;

b) Designating Plaintiffs Naim Sayodi, Ray Sanchez, and Abu Omar as Class Representatives;

c) Designating Joseph & Norinsberg, LLC as Class Counsel;

d) A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

e) An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f) Granting judgment in favor of Plaintiffs and the New York Class, and against Defendants, and awarding the amount of unpaid tips, with liquidated damages;

g) Awarding all available compensatory damages to Plaintiff and the New York Class, including, inter alia, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

h) Awarding up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i) Awarding up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages,

any allowances claimed as part of the minimum wage, and the employee's gross and ne wages for each pay day;

j)       Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action. pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

k)       Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages; and

l)       Granting other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated:    New York, New York
          November 2, 2018

**JOSEPH & NORINSBERG, LLC**

By: _____
Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700
New York, New York 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
*Attorneys for Plaintiff and Putative Class*

20